HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEREK SPARKS,<br><br>        Plaintiff,<br><br>    v.<br><br>SOUTH KITSAP SCHOOL DISTRICT, and DAVE LAROSE, an individual,<br><br>        Defendants. | CASE NO. 3:13-cv-05682-RBL<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>[DKT. #24] |

## I.  SUMMARY

THIS MATTER is before the Court on Defendants' Motion to Dismiss. [Dkt. #24]. Plaintiff Sparks, an African American, was a counselor at Defendant South Kitsap School District. He claims that fellow employees made racial remarks to and about him during his four-year tenure. He and his employer also had tension over his medical leave, his extracurricular activities, and his performance. The District voted to not renew his contract at the end of the 2010–2011 school year.

Sparks sued the District and its Superintendent, LaRose, claiming that his contract was not renewed because of his race and because he complained about his colleagues' alleged racial remarks. He asserts federal discrimination and retaliation claims under 42 U.S.C. § 1981; and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 1

parallel state law claims under Washington's Law Against Discrimination ("WLAD"). He also asserts a wrongful termination claim and seeks punitive damages. Defendants move to dismiss all claims, arguing that Sparks does not plausibly state a claim that Defendants declined to renew his contract because of his race, or because he had complained about coworkers' racial comments.

## II.   BACKGROUND[1]

Derek Sparks was hired as a counselor in the South Kitsap School District in 2009. He also coached football. He claims that fellow employees made racially charged remarks during his tenure. For example, not long after Sparks started, Dr. Thomas Mosby (Sparks' supervisor) told him that Sandy Elton (an administrative assistant) had referred to Sparks as the "chocolate" candidate behind his back—while recommending that the District hire him. He also claims that other District employees made racial remarks directly to him. Dave Neighbors (a teacher), called Sparks an "uppity N****" because he drove a new car to work. On another occasion, Jim Fairweather (a coach), told Sparks he liked him because he did not "act like a N*****" and "was articulate." Sparks claims he complained to Mosby after each of these incidents, but each time Mosby laughed about the remarks and did nothing.

Sparks stepped down as football coach in late May 2010 because he could not deal with the other coaches, "who were jealous of his celebrity status, write-ups in the newspaper and great connection with the students." Sparks' conflicts with Elton also persisted during this period. Sparks emailed Mosby in December 2010, complaining that Elton was still insubordinate and was bad mouthing Sparks, and claiming that he faced increasingly hostile work environment.

---

[1] For the purposes of this Rule 12(b)(6) Motion, the Court takes the facts as alleged.

Sparks claims that his complaints were ignored[2] and that Mosby appeared worried about losing his job if he escalated the complaint. In early May 2011, Mosby informed Sparks that he "had some haters" and that the Assistant Superintendent of Human Resources, Gregory Roberts, was investigating him. At some point, Elton took a document from Sparks' desk that showed Sparks had been paid for a speaking engagement at Washington State University, and gave it to Roberts.

Sparks took sick leave for one workweek in March 2011, saying that he was ill. He also emailed Roberts on May 5, 2011 to request personal leave for May 20 for an unspecified reason. A few days later Mosby warned Sparks that the District was going to "railroad" him. Roberts emailed Sparks on May 11 to inform him that the District was investigating the possibility that Sparks had violated his employment contract and the District's conflict of interest policies. Nevertheless, a few days later, Roberts granted Sparks' May 5 request for personal leave. On May 16, Sparks learned that Elton had told Roberts that Sparks was selling t-shirts out of his office.[3] Sparks claims he merely made a t-shirt donation to the South Kitsap track team.

In June, Mosby showed up at Sparks' office and "frantically" showed him a Roberts document claiming that Mosby knew about and approved "the leave days in question."[4] Mosby demanded that Sparks "fix it" by telling Roberts and Kurt Wagner, Deputy Supervisor, that Mosby had in fact not approved the leave and that Sparks had lied when he said Mosby had. In response, Sparks told Mosby that Roberts' report was "all lies."

---

[2] Sparks claims that he was never *asked* to make his complaints in writing, but he did write them in emails of his own accord more than once. The Court takes this to mean that no one asked Sparks to fill out any paperwork or file a formal grievance.

[3] Presumably, Elton's statement to Roberts took place before Roberts began his investigation, but the chronology is unclear from Sparks' complaint. Sparks also says Elton and Neighbors "conspired" against him, but he does not say what they conspired to do, or how they did it.

[4] Sparks does not specify which leave days were in question, but he presumably refers to the March sick leave because Roberts personally approved the May personal leave.

On July 7, LaRose met with Sparks one-on-one. LaRose told Sparks that he was going to recommend that the District not renew Sparks' employment contract. LaRose gave Sparks the option to resign, but Sparks refused. On July 13, the Board of Directors of the District[5] voted to not renew Sparks' employment contract and LaRose sent Sparks a formal letter the next day informing him of the decision. Sparks' Complaint does not recite the reason the District gave for declining to renew his contract, but it does claim that whatever the stated reasons were, they were false and pretextual. Sparks claims that he was fired because he is African-American and because he had complained about racially discriminatory workplace conduct.

Sparks sued[6] under 42 U.S.C. § 1981 (the right to contract free from racial discrimination) and under WLAD (which prohibits disparate treatment based on race). He also claims common law wrongful termination in violation of public policy, and seeks punitive damages. Defendants move to dismiss all of these claims. They argue that Sparks has not plausibly pled facts or claims from which a discriminatory or retaliatory intent can be inferred.

Because Sparks has pled facts that permit the Court to infer a connection between the alleged racial remarks, Sparks' complaints, Mosby's inaction, and the Board's vote to not renew Sparks' contract, the Motion to Dismiss the § 1981, WLAD, and punitive damages claims is DENIED. However, because the common law wrongful termination claim is unavailable to Sparks as a matter of law, the Motion to Dismiss that claim is GRANTED.

---

[5] Sparks does not allege that Elton, Neighbors, or Fairweather were on the Board or had any influence on the Board's decision.

[6] Sparks initially made a *Monell* claim against the District for discrimination under § 1981, which he has since conceded was without merit. He also (by failing to respond to the motion) has abandoned his breach of contract and outrage claims. *See* Dkt. #25.

### III.    DISCUSSION

The Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6), claiming that the Sparks has not met (and cannot meet) *Iqbal* and *Twombly's* heightened pleading standard. Sparks opposes the motion on two main grounds.[7] First, Sparks argues that the Defendants are confusing the standard for pleading with the standard for summary judgment. Second, Sparks argues that he has in fact plausibly claimed that he was the subject of discrimination and retaliation, and that his claims meet the federal pleading standard.

### A.    Standard of Review

Sparks claims that the Defendants are mistakenly applying a summary judgment standard to the pleadings in their Motion. According to Sparks, Fed. R. Civ. P. 8, establishes a low bar for a sufficient complaint. The Defendants counter that *Iqbal* and *Twombly*, have raised the bar for pleadings above what a plain reading of the Rule would indicate. Defendants copiously cite *Iqbal* and *Twombly* in support of this argument.

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

---

[7] Sparks also asks the Court to deny the motion outright because the Defendants' motion misstates the law, is deficient in authority, and is over-length. It is true that Defendants rely, perplexingly, on trial court decisions, decisions from outside this jurisdiction, and decisions that—even if they were precedential—would not be factually relevant. However, Defendants correctly invoke Fed. R. Civ. P 12(b)(6), regardless of their use of a wide variety of non-authoritative sources. And contrary to Sparks' assertion, Fed. R. Civ. P. 7 does not prescribe a page limit at all. The *local* rules limit a motion to dismiss to 24 pages, not 12. LCR 7(e)(3). The Defendants' brief was, mercifully, two pages under the limit. Sparks' request to dismiss the motion fails on these technical grounds.  The Court will evaluate the Motion to Dismiss on its merits.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Fed. R. Civ. P. 12(b)(6) motion. *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly* ).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Sparks' response appears to dispute whether the *Iqbal/Twombly* standard even applies. Sparks claims that *Swierkiewicz v. Sorema*, *N.A.*, 534 U.S. 506 (2002), which deals with pleading standards for discrimination cases, was not overruled by *Iqbal/Twombly*. This is simply wrong. *Swierkiewicz* and *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246 (9th Cir. 1997), upon which Sparks also relies, were decided years before *Iqbal* and *Twombly* and are entirely inapplicable now. Defendants were not, as Sparks claims, confusing the summary judgment standard with the

federal standard of pleading (mostly because the Defendants cite directly to the cases in which the Supreme Court lays out the new standard). Dkt. #24 at 2.

This is not to say the Court agrees with Defendants' logic. Defendant's Motion appears to claim that, unless a plaintiff can conclusively rebut an anticipated defense, it is not plausible. This has not ever been true, and is not true under even the heightened *Twombly* pleading standard. Defendants seem to imply that there is some sort of presumption that the termination was NOT for discriminatory reasons.[8] There is not. These arguments are, as Sparks suggests, more appropriate for summary judgment. Having resolved this threshold dispute, the Court will evaluate the Motion on its merits, applying the correct pleading standard.

**B.      Racial discrimination under 42 U.S.C. § 1981**[9]

Sparks claims that LaRose discriminated against him because of his race, and in doing so, interfered with the renewal of his employment contract. Sparks asks that the Court infer from LaRose's position of authority and his recommendation that the Board not renew Sparks' contract that LaRose's recommendation was motivated by racial animus. LaRose replies that Sparks has not pled any facts that plausibly connect him to any intentional discrimination.

---

[8] Defendants argue that Sparks (1) did not demonstrate that he did *not* abuse his leave; (2) failed to provide facts from which the Court could infer that the District had a legitimate reason to decline to renew Sparks' contract; and (3) "appears to admit that he sold t-shirts out of his office" although the District does not claim that "t-shirt sales had anything to do with the nonrenewal of his employment contract." Dkt. #24.
    The Court is particularly puzzled by the last assertion. The Defendants appear to preemptively defeat an argument they might have made later on to justify their own actions: that Sparks was terminated *legitimately* for, among other things, *selling t-shirts* in violation of his employment contract. In any event, none of these arguments is a sufficient basis for denying a Motion to Dismiss—which tests the pleadings, not the evidence.

[9] Sparks' alleged facts (if true) might have given rise to a Title VII or similar claim, but Sparks does not bring one, probably because he failed to use any administrative procedures to address his grievance and is therefore ineligible to sue under the usual civil rights statutes.

Under 42 U.S.C. § 1981(c), the freedom to contract is protected against impairment by those acting under color of state law. § 1981 "can be violated only by purposeful discrimination" and specific unlawful discriminatory intent is required. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). To make a prima facie case, a plaintiff must plead facts that plausibly establish that a defendant's intentional discrimination interfered with the plaintiff's right to contract freely without racial discrimination. *See id.*; 42 U.S.C. § 1981.

Sparks claims that his coworkers made racially charged remarks, he complained about the remarks, his complaints were ignored, and a short time later, upon LaRose's explicit recommendation, his contract was not renewed. Sparks argues that although LaRose himself did not make those remarks, he "discriminated against [Sparks] in part because he is African American" and "terminated [Sparks] because of his race and ethnicity", Dkt. #25 at 7. This claim plausibly supports a prima facie case that LaRose discriminated against Sparks: LaRose was superintendent of the District, and Sparks has plausibly alleged that the District terminated him in connection with the racial remarks that went unpunished and were therefore implicitly sanctioned. The Defendants prematurely ask the Court to dismiss the claim before discovery may or may not support Sparks' claims. At the pleading stage, Sparks has done enough. He has pled "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly* ). Defendants' Motion to Dismiss the §1981 racial discrimination claim against LaRose is DENIED.

**C.     Retaliation under 42 U.S.C. § 1981**

Sparks claims that the District and LaRose retaliated against him for complaining about his coworkers' alleged racial remarks. He claims that this retaliation deprived him of equal employment opportunities and that any other reason that the Defendants give for his termination

is "pretextual to hide a discriminatory animus and retaliation." Dkt. #25 at 8. The Defendants argue once again that Sparks' complaint relies on speculation and conjecture and fails to establish any link whatsoever between Sparks' protected activities and the District's choice to not renew Sparks' contract. Sparks disagrees that his pleading is deficient.

Retaliation is a cognizable claim under § 1981, as construed by the Supreme Court. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457, 128 S.Ct. 1951, 1961, 170 L.Ed.2d 864 (2008). It has been held to offer "protection from retaliation for reasons related to the *enforcement* of the express statutory right" of equal treatment regardless of race. *Id.* at 452.

Sparks rather baldly states that his contract was not renewed because he complained about racially motivated comments Elton, Neighbors, and Fairweather made to him. He claims that the District's claimed reasons (whatever they were) for that non-renewal were pretextual. Mosby—a supervisor—knew of the racial remarks and Sparks' complaints but did nothing in response.[10] As bare as these facts and claims may be, they are more than "mere conjecture." Sparks has plausibly claimed that his coworkers made racial comments to him and his superiors did nothing. Soon after Sparks complained, the District instigated an investigation into his abuse of sick leave, and soon after that, LaRose made it clear that he would recommend to the Board that Sparks' contract not be renewed. This temporal relationship clearly permits an inference of a retaliatory motive in the Board's decision to not renew Sparks' contract. Whether Sparks has or can obtain evidence to support these claims is another question, but Sparks has pled facts that elevate his claim above mere speculation. The Defendants' Motion to Dismiss Sparks' § 1981 retaliation claim is DENIED.

D.     **Discrimination in violation of WLAD**

Sparks alleges that the District violated WLAD because it declined to renew his contract based on his race. He claims that he was given harsher punishment for abusing leave than others were (although he denies abusing his leave). The District responds that Sparks failed to allege facts that would allow the court to infer a prima facie case of discrimination.

WLAD makes it unlawful for employers "[t]o discharge or bar any person from employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability." RCW 49.60.180(2). In order to make a prima facie case for racial discrimination based on disparate treatment, a plaintiff must demonstrate: (1) he belongs to a protected class; and (2) he was treated less favorably in the terms and conditions of his employment (3) than a similarly situated, non-protected employee. A plaintiff must also show that he and the comparator were doing substantially the same work. *Washington v. Boeing*, 105 Wn. App. 1, 13 (2001).

Sparks claims that the District's purported reasons for not renewing his contract were false and merely pretextual. He claims that his race was a factor in the decision to not renew his employment contract. As discussed, Sparks plausibly claims he was the target of multiple racially charged remarks and yet his complaints to his superiors went nowhere. Indeed, he claims he was instead laughed at. He also claims that the District learned that other employees went skiing while on sick leave, and they were not punished.[11] These facts permit an inference that the Sparks' contract was not renewed for reasons that were perhaps different than the District's unspecified reasons, and that Sparks was treated differently than were others. The facts as pled

---

[11] Sparks does not explicitly state that the teachers mentioned were members of a non-protected class. However, he does state that less than 1% of the District's employees are African American, so the odds weigh heavily in Sparks' favor. The Court also assumes that Sparks would not have mentioned these teachers if they, too, were African American.

are enough to avoid dismissal of the claim. They are not merely "conclusory allegations of law and unwarranted inferences." *See Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007). The Motion to Dismiss Sparks' WLAD discrimination claim is DENIED.

### E.  Retaliation in violation of WLAD

Sparks also brings a retaliation claim against the District under WLAD for firing him because he complained about racial remarks and a hostile workplace. The District counters that Sparks fails to allege facts that establish a prima facie case of retaliation. Sparks disagrees.

To state a prima facie case of retaliation under the WLAD, plaintiff must establish that (1) he engaged in a statutorily protected activity, (2) his employer took adverse action against him, and (3) there is a causal link between the protected activity and adverse employment action. *Briggs v. Nova Services*, 135 Wn. App. 835, 862 (2000). To show a causal connection, the employee must show that the employer's motivation for the discharge was the employee's exercise or intent to exercise a protected right. *Wilmot v. Kaiser Aluminum & Chemical Corporation*, 118 Wn.2d 46, 68-69 (1991).

Sparks successfully pleads a prima facie retaliation claim because his Complaint plausibly connects his complaining about the racial remarks to Sparks' contract not being renewed. For the reasons discussed above with regard to Sparks' § 1981 retaliation claim, Sparks pleads sufficient facts to permit an inference that he was retaliated against for complaining about the racial remarks. The Motion to Dismiss the WLAD retaliation claim is DENIED.

### F.  Wrongful Termination

Sparks also brings a claim against the District for the common law tort of wrongful termination in violation of public policy as a "Plan B" in case the statutory claims fail. The District responds that Sparks' rights are already adequately protected by existing statutes, making the tort unavailable as a matter of law.

Wrongful termination in violation of public policy is an intentional tort. *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 177, 876 P.2d 435 (1994); *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 726 P.2d 434 (1986). To prevail, the complaining employee "must prove (1) the existence of a clear public policy (*clarity* element); (2) that discouraging the conduct in which [he or she] engaged would jeopardize the public policy (*jeopardy* element); and (3) that the public-policy-linked conduct caused the dismissal (*causation* element)." *Hubbard v. Spokane County,* 146 Wn.2d 699, 707, 50 P.3d 602 (2002) (emphasis in original). Courts apply a "strict adequacy" standard: the public policy tort is precluded unless it is the only available means to protect the public policy. *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 530, 259 P.3d 244 (2011). The Court may determine strict adequacy as a matter of law if "the inquiry is limited to examining existing laws to determine whether they provide adequate alternative means of promoting the public policy." *Korslund v. DynCorp Tri–Cities Servs., Inc.,* 156 Wn.2d 168, 182, 125 P.3d 119 (2005). If existing laws promote the policy, there is no need for the public policy tort and the jeopardy element is moot.

The laws under which Sparks seeks relief *in this very claim* were enacted for the express purpose of protecting against discrimination and retaliation. 42 U.S.C. § 1981 was enacted to ensure all citizens an equal right to contract freely, and WLAD prohibits discrimination and retaliation. Clearly, policymakers in both Washingtons have enacted layers of protection against the exact types of wrongs in which Sparks claims the District and LaRose engaged.

Existing laws comprehensively protect against discrimination and retaliation. Sparks can hardly dispute this, as he brings claims under several of them. As a matter of law, that statutory protection is adequate. Sparks' argument that his public policy claim must be preserved if his WLAD claims are dismissed is also misguided. Public policy claims may only be brought in

Washington if existing statutes do not adequately protect the allegedly violated public policies. The availability of the public policy claim turns on *adequacy* of statutory protection, not *entitlement* to relief. The Defendants' Motion to Dismiss is GRANTED and the wrongful termination claim is DISMISSED with prejudice.

### G.  Punitive damages

Sparks' complaint asks for punitive damages against LaRose because he acted in "conscious disregard" for Sparks' constitutional and federally protected rights. The Defendants argue that "conscious disregard" is the incorrect standard and that the correct standard is "reckless indifference,"[12] and that in any case the pled facts do not permit an inference that LaRose's actions subject him to punitive damages.

Claims under § 1981 may give rise to punitive damages. *See, e.g.*, *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003). Punitive damages may be awarded if a defendant's behavior is "willful and egregious, or display[s] reckless indifference to the plaintiff's federal rights." *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998) (citations and footnotes omitted). Punitive damages are not appropriate when a defendant was merely negligent. *Id.* "[N]egligent decisionmaking and poor communication among managers may properly give rise to compensatory liability" but not to exemplary damages. *Id.* at 1305.

Sparks alleges that he was fired because he is African American and because he complained of racial remarks by coworkers. These allegations constitute a claim of intentional discrimination and retaliation, not negligence. Regardless of which functionally identical

---

[12] Stated as generously as possible, the Defendants' argument about the correct standard to apply is mere semantics. *See Black's Law Dictionary* (9th ed. 2009) ("RECKLESS**,** *adj.* Characterized by the creation of a substantial and unjustifiable risk of harm to others and by a **conscious (and sometimes deliberate) disregard for or indifference to that risk.**") (emphasis ours).

wording the Court chooses, firing a person because of his race or because he complains about discriminatory treatment is *per se* a violation of federally protected rights. As discussed at length, the Court has concluded that Sparks has sufficiently pled his federal claims. Because punitive damages are necessarily tied to his discrimination and retaliation claims, the Defendants' Motion to Dismiss is DENIED as to punitive damages.

### IV.  CONCLUSION

Because existing law sufficiently protects Sparks' interests, Defendants' Motion to Dismiss the wrongful termination claim is GRANTED and the claim is DISMISSED with prejudice. Because Sparks has alleged facts that plausibly establish liability on the remaining claims, Defendants' Motion to Dismiss the remaining claims is DENIED.

Dated this 18th day of March, 2014.

*[signature]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE